NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 69

No. 2017-020

In re Thomas S. Sharrow

Supreme Court

On Appeal from
Superior Court, Chittenden Unit,
Civil Division

June Term, 2017

Helen M. Toor, J. (motion for summary judgment); Robert A. Mello, J. (final decision on merits)

Paul Volk of Blodgett, Watts & Volk, P.C., Burlington, for Petitioner-Appellee.

David Tartter, Deputy State's Attorney, Montpelier, for Respondent-Appellant.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **ROBINSON, J.** At issue in this post-conviction relief (PCR) appeal is whether petitioner was prejudiced as a result of counsel's ineffective assistance in his underlying trial. The PCR court vacated petitioner's conviction of attempted second-degree murder on the basis of ineffective assistance of counsel. In particular, the PCR court concluded that petitioner's trial counsel fell below the standard of accepted practice in Vermont by failing to object to jury instructions that did not require that the State prove the absence of passion or provocation in order to convict for attempted second-degree murder and did not include attempted voluntary manslaughter as a lesser offense. On appeal, the State does not challenge the PCR court's conclusion that counsel was ineffective in petitioner's underlying criminal trial, but argues that petitioner was not prejudiced by the ineffective assistance. We affirm.

¶ 2.    After an evidentiary hearing, the PCR court found the following facts. In the underlying criminal trial, complainant and petitioner presented different accounts of the incident that led to petitioner's conviction. According to complainant, she and petitioner began living together in January 2003. After a couple of months, petitioner started to abuse her. There were several abusive instances between March and September 2003. The police were called on several occasions and petitioner was told to leave multiple times, however the two always got back together. Complainant testified that on October 4, 2003, petitioner visited her at her home while she was sick. When she said something that angered him, petitioner began assaulting complainant. Complainant started screaming, and the neighbors came to her aid. Complainant left with the neighbors to call the police and petitioner left the premises. Later that night, sometime after midnight, petitioner reentered complainant's house through the window. He threatened to kill her for calling the police earlier in the day, punched her, and began to strangle her. He then went to the kitchen and retrieved one or more knives and continued the assault. Upon hearing complainant screaming, the neighbors again called the police, who arrived and arrested petitioner at the house. Complainant had multiple knife wounds to her head, neck, arm, and back, most of which were superficial but at least one of which was potentially life threatening.

¶ 3.    Petitioner's retelling was starkly different. Petitioner testified that complainant drank often and was frequently abusive while drunk. For example, on prior occasions she had sprayed him with mace, and a couple of weeks before the October 4 incident, complainant hit petitioner over the head with a cutting board. Petitioner admitted entering through the window on October 4 but claimed he did not intend to kill complainant. According to petitioner, he found complainant shaking, upset, and holding a knife with the blade up. Because she had tried to "take [his] head off with a cutting board" the week before, and because he "didn't want to get stuck with the knife," he grabbed hold of complainant's wrist. The two struggled violently as he tried to get her to drop the knife. Petitioner claimed that the knife remained in complainant's hand throughout

2

the struggle, and that he did not realize she had been cut by the knife during the struggle. He explained that, after he succeeded in getting complainant to drop the knife, he went into the kitchen, grabbed his keys to leave, and saw a butterfly knife on the counter. He explained that he grabbed the knife "out of instinct" because he wasn't in his "right mind" and because he did not want complainant to use the knife on him as he left. He testified that he never touched her with that knife. Police arrested petitioner on the porch as he left the apartment. He had the butterfly knife hidden in his sleeve and a small cut between the fingers of his right hand.

¶ 4. In closing argument in the underlying criminal trial, the State argued that petitioner, angry that complainant had called the police the evening before, broke into her apartment and repeatedly stabbed her in a deliberate and premeditated attempt to kill her. The State asked the jury to return a verdict of attempted first-degree murder. Defense counsel argued that petitioner acted in self-defense and that the stab wounds complainant sustained were the unintended result of a violent struggle that took place after she came at him with a knife.

¶ 5. The sentencing court instructed the jury on attempted first-degree murder, attempted second-degree murder, and aggravated assault, as well as self-defense. Earlier drafts of the trial court's proposed jury charge included instructions on attempted voluntary manslaughter, but the court's final instructions did not include this lesser offense, and the court's instruction on attempted second-degree murder did not inform the jury that the State had the burden of proving beyond a reasonable doubt that petitioner had not acted out of passion or provocation. The sentencing court explained that the evidence did not support such instructions. Defense counsel did not object to the instructions. The jury acquitted petitioner of attempted first-degree murder and convicted him of attempted second-degree murder. He is currently serving a sentence of twenty years to life.

3

¶ 6. On the basis of these and other findings, the PCR court concluded that petitioner's counsel did not meet the professional standard in Vermont.[1] The PCR court concluded that there was sufficient evidence presented at trial to warrant an instruction on attempted voluntary manslaughter and the absence of provocation.[2] "Where passion or provocation is implicated, the court must instruct the jury that to establish murder the State must prove beyond a reasonable doubt that the accused did not kill under the influence of passion or provocation." State v. Hatcher, 167 Vt. 338, 345-46, 706 A.2d 429, 433 (1997). The PCR court concluded that petitioner's testimony that complainant had been drunkenly abusive toward him in the past, that she had recently hit him over the head with a cutting board, and that she had been upset and holding a knife on the night of the incident could support a finding that petitioner acted out of provocation, warranting the instructions for both the absence of provocation and attempted voluntary manslaughter. The PCR court acknowledged that the main defense strategy at trial was self-defense, but concluded that in this case there was no strategic or tactical reason not to insist that the jury instructions include the absence-of-provocation element of second-degree murder and the lesser offense of voluntary manslaughter in order to minimize an adverse verdict in the event that the jury rejected petitioner's claim of self-defense.

¶ 7. The PCR court further concluded that petitioner was prejudiced by counsel's errors in that there was a substantial likelihood that, had the jury been given the proper instructions, it would have acquitted petitioner of attempted second-degree murder and returned a verdict for attempted voluntary manslaughter. The court recounted the testimony of petitioner's expert, who

---

[1] The PCR court's findings and conclusions were also supported by the testimony of petitioner's legal expert as to the standard of practice. Because the trial court's conclusion as to ineffective assistance is not at issue in this appeal, we do not recount the testimony or findings on that point.

[2] Voluntary manslaughter is the unlawful killing of another, without malice, and under the influence of adequate provocation, without time to regain self-control. State v. Shabazz, 169 Vt. 448, 450, 739 A.2d 666, 667 (1999).

4

opined that the jury's acquittal of petitioner of attempted first-degree murder suggests that the jury accepted the State's evidence that petitioner had assaulted complainant with a knife for the purpose of killing her, but that the jury was unpersuaded by the State's evidence of premeditation and was inclined by the evidence to reduce petitioner's culpability for the assault. In reaching its conclusion, the PCR court found that given petitioner's testimony about his history with complainant and how the encounter unfolded, the jury could have had a reasonable doubt on the issue of provocation, which was an essential element of the attempted second-degree murder offense. It further noted that by acquitting petitioner of first-degree murder, the jury rejected the State's claim that petitioner had acted with premeditation. Finally, it emphasized the State's extremely high burden of proving absence of provocation beyond a reasonable doubt. The PCR court rejected the State's argument that, because neither the State's narrative nor petitioner's would have supported a conviction for voluntary manslaughter, it would have been unreasonable for a jury to accept and reject pieces of both complainant's and petitioner's testimony in order to convict on the lesser charge; the court concluded that juries routinely sift through the evidence, accepting some of what each witness says as true and rejecting other parts of their testimony as unreliable.

¶ 8.    On appeal, the State challenges the PCR court's conclusion that petitioner was prejudiced as a result of the ineffective assistance of counsel at his criminal trial. The State's argument has two components: one legal and one evidentiary. First, the State contends that the trial court failed to apply the proper standard because the measure of prejudice in ineffective assistance claims is almost indistinguishable from a more-probable-than-not standard. The State rests this argument on a statement by the U.S. Supreme Court that the difference between the applicable prejudice standard and a more-probable-than-not standard "is slight and matters 'only in the rarest case.' " Harrington v. Richter, 562 U.S. 86, 111-12 (2011) (quoting Strickland v. Washington, 466 U.S. 668, 693 (1984)). The State's evidentiary argument is that the PCR court's analysis, and the expert testimony on which it was based in part, failed to properly weigh all of the

5

evidence in the underlying trial contradicting petitioner's testimony and corroborating complainant's, and assigned undue significance to the jury's acquittal on the attempted first-degree murder count. We reject both arguments.

¶ 9. With respect to the legal standard for measuring prejudice, we conclude that the touchstone is whether the error undermined confidence in the outcome of the criminal trial. The U.S. Supreme Court discussed the standard for evaluating prejudice in an ineffective assistance of counsel claim at length in Strickland v. Washington, 466 U.S. at 691-96. Recognizing that even a professionally unreasonable error by counsel does not warrant setting aside a criminal conviction if the error had no effect on the judgment, the Supreme Court considered the proper test for determining whether ineffective assistance of counsel warrants vacating a criminal conviction. Id. at 691-92. The Court recognized that "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding," but also emphasized that "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." Id. at 693. Acknowledging the advantages of an outcome-determinative standard, the Court concluded that such a standard was not appropriate. Id. at 693-94. Comparing the standard of prejudice for ineffective assistance of counsel claims to that applicable to newly discovered evidence, the Supreme Court explained that the finality concerns are weaker in the former because ineffective assistance of counsel compromises one of the crucial assurances that the result of a proceeding is reliable; accordingly, the Court explained that the appropriate standard of prejudice in ineffective assistance claims should be somewhat lower. Id. at 694. The relevant question is whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. This benchmark has guided the Supreme Court's, and this Court's, evaluation of ineffective assistance claims since that time. See, e.g., Harrington, 562 U.S. at 112 (relying on Strickland as establishing standard of prejudice

6

in ineffective assistance claim); <u>State v. LaBounty</u>, 2005 VT 6, ¶ 7, 177 Vt. 635, 869 A.2d 120 (citing and applying <u>Strickland</u> standard).

¶ 10.    We decline the State's invitation to shift our focus to a more probabilistic analysis. Adopting something akin to a more-likely-than-not standard would run afoul of the Supreme Court's deliberate rejection of such a standard in <u>Strickland</u> in favor of an approach that emphasizes confidence in the outcome of the prior proceeding.  We recognize that in <u>Strickland</u> the Supreme Court acknowledged that its newly announced standard imposed a less onerous burden on convicted defendants than the strict outcome-determinative test that had been applied by some lower courts and opined that the new standard should alter the merit of an ineffectiveness claim "only in the rarest case."  <u>Strickland</u>, 466 U.S. at 697.  The Supreme Court repeated the "rarest case" language more recently in <u>Harrington</u>, 562 U.S. at 112.  However, the Supreme Court did not suggest in either <u>Harrington</u> or <u>Strickland</u> that this language was intended to supplant the more extensive analysis leading the Court to expressly reject a more-likely-than-not standard.

¶ 11.    We likewise reject the State's evidentiary arguments.  The question of prejudice is a mixed question of law and fact.  <u>Strickland</u>, 466 U.S. at 698.  When reviewing the question of prejudice, "a court must take into account all of the evidence before the jury, considering the trial as it actually unfolded."  <u>In re Towne</u>, 2013 VT 90, ¶¶ 9-10, 195 Vt. 42, 86 A.3d 429 (applying analogous "reasonable probability" standard under statutory Innocence Protection Act).  As the Supreme Court explained in <u>Strickland</u>:

> Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways.  Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect.  Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.  Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision

7

reached would reasonably likely have been different absent the errors.

Strickland, 466 U.S. at 695-96. We review the trial court's findings of fact for clear error, and the conclusions of law with no deference.

¶ 12. Considering the evidence before the PCR court and the exacting standard of proof the State faced with respect to every element of the crime of second-degree murder, we conclude that the PCR court did not err in concluding that if defense counsel had sought proper jury instructions in this case there is a reasonable probability of a different outcome. The State is right that some physical evidence—a voicemail message on complainant's answering machine, observations of disinterested witnesses, and the observations of the police who responded to the scene—corroborated much of the complainant's testimony and undermined petitioner's. The jury clearly disbelieved petitioner's story of self-defense and concluded that he intentionally attempted to kill complainant by stabbing her. The omitted jury instructions would not have affected the jury's conclusion on these points, and petitioner did not argue otherwise. Even with respect to the question of provocation, the volume of evidence corroborating complainant's broader narrative calls into doubt whether the jury would have believed petitioner with respect to the evidence of provocation in the face of complainant's contrary testimony.

¶ 13. But we conclude that the PCR court's findings of fact were not clearly erroneous, and its legal conclusions are supported by the evidence and findings, for three reasons. First, the error in this case removed from the jury's consideration an essential element of the second-degree murder charge. Second, the existence of that element was supported by substantial evidence. Third, the State's burden of proof on this element was high. The fact that, to acquit of attempted second-degree murder and convict petitioner of voluntary manslaughter, the jury would have had to credit portions of petitioner's testimony while rejecting most of it does not undermine our conclusion.

8

¶ 14. On the first point, our established law is clear: " 'Where passion or provocation is implicated, the court must instruct the jury that to establish murder the State must prove beyond a reasonable doubt that the accused did not kill under the influence of passion or provocation.' " State v. Bolaski, 2014 VT 36, ¶ 18, 196 Vt. 277, 95 A.3d 460 (quoting Hatcher, 167 Vt. at 345-46, 706 A.2d at 433). A defendant is entitled to instructions that are "full, fair and correct on all issues, theories and claims presented by the evidence." Id. ¶ 19. Without the absence-of-provocation instruction, the jury was not fully informed of the elements necessary to convict petitioner of attempted second degree murder. See State v. Couture, 146 Vt. 268, 272, 502 A.2d 846, 849 (1985) (holding that when jury instructions allow conviction on less proof than elements of crime require, conviction may be vacated.) In this case, on account of the ineffective assistance of counsel, petitioner did not have the benefit of full, fair, and correct instructions, and the jury could convict him of second-degree murder without ever considering the essential element of provocation.

¶ 15. Second, and closely related, sufficient evidence supported the element of provocation to warrant an instruction.[3] Petitioner testified about his past history with complainant, and described recent circumstances in which she had physically assaulted him. He testified that he encountered her shaking and upset, wielding a knife with the point up, and that he engaged in a struggle with her over the knife. Petitioner's expert testified that these circumstances were sufficient to support an instruction on reasonable provocation. Although the jury may well have concluded on the record evidence that petitioner did not act pursuant to provocation, there is a reasonable probability that it would have. As petitioner's expert explained, there is an "inverse relationship" between premeditation and provocation; the fact that the jury acquitted petitioner of

---

[3] The State does not dispute this assertion, which is implicit in the trial court's uncontested conclusion that defense counsel's failure to object to the instructions as given amounted to ineffective assistance.

9

attempted first-degree murder, and thus rejected the suggestion that this was a planned attempted killing, makes it more likely that the jury would have concluded that the attempted killing was provoked, occurring in the midst of a struggle. Moreover, petitioner's expert noted that evidence of the wound on petitioner's hand supports a narrative of a hand-to-hand struggle over the knife. In the face of this testimony, the PCR court did not clearly err in concluding that there was a substantial likelihood that, given the opportunity, the jury may have had a reasonable doubt as to whether petitioner acted pursuant to legal provocation.

¶ 16. Third, and again closely related, the standard ultimately applied by the jury in this case was whether the State had proven every essential element beyond a reasonable doubt. Even if we concluded that the jury would have believed that petitioner's attempt to kill complainant was most likely not legally provoked, that would not be enough. The State's burden of proof is high; where there is sufficient evidence to support a jury instruction on provocation, we are loathe to presume that the jury would have concluded that the State satisfied this great burden when the jury was never asked the question. See State v. Caron, 155 Vt. 492, 502, 586 A.2d 1127, 1133 (1990) (distinguishing between "a high standard of proof" necessary to prove elements of crime beyond reasonable doubt and "less stringent" standard for establishing voluntariness of confession (quoting Lego v. Twomey, 404 U.S. 477, 486 (1972))).

¶ 17. We are not moved in this case by the State's argument that a finding of prejudice is unreasonable because an acquittal on the charge of attempted second-degree murder and conviction for voluntary manslaughter would have required the jury to credit some of petitioner's trial testimony, while rejecting most of it. As the PCR court noted, juries routinely accept and reject portions of testimony in determining what actually happened. This is sufficient to undermine confidence in the outcome of the trial.

¶ 18.    For the above reasons, we affirm the PCR court's conclusion that petitioner's conviction should be vacated because petitioner was prejudiced by counsel's ineffective assistance.

Affirmed.

FOR THE COURT:

_____

Associate Justice

11