NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 5

Nos. 2013-191 & 2015-382

| | |
|---|---|
| In re Edwin A. Towne, Jr. | Supreme Court |
| | On Appeal from Superior Court, Chittenden Unit, Civil Division |
| | September Term, 2017 |

Geoffrey W. Crawford, J. (2013-191)
Helen M. Toor, J. (2015-382)

Edwin A. Towne, Jr., Pro Se, Marion, Illinois, Petitioner-Appellant.

Thomas J. Donovan, Jr., Attorney General, and John Treadwell and Eleanor L.P. Spottswood, Assistant Attorneys General, Montpelier, for Respondent-Appellee.

PRESENT: Reiber, C.J., Skoglund, Robinson and Eaton, JJ., and Burgess, J. (Ret.), Specially Assigned

¶ 1. **ROBINSON, J.** Petitioner Edwin A. Towne, Jr. appeals in this consolidated case from the dismissal of two petitions for post-conviction relief (PCR), his tenth and eleventh such petitions. Because his various claims are either successive, an abuse of the writ, or outside the scope of the PCR statute, we affirm.

¶ 2. This somewhat complex appeal requires an understanding of petitioner's past history of PCR petitions; the two PCR petitions on appeal in this case; our law concerning successive petitions and abuse of the writ, respectively; the potential implications of the U.S. Supreme Court's 2012 decision in Martinez v. Ryan, 556 U.S. 1 (2012); and the effect of these considerations on petitioner's main contentions on appeal.

## I. Prior PCR Petitions

¶ 3.     The relevant history is as follows.  In 1989, petitioner was convicted of first-degree murder.  This Court's decision on petitioner's direct appeal of his conviction describes the circumstances of the underlying crime.  State v. Towne, 158 Vt. 607, 615 A.2d 484 (1992).

¶ 4.     While his direct appeal was pending, petitioner filed a petition for post-conviction relief (PCR) in the superior court alleging that he had been denied a speedy trial and that his trial counsel was ineffective in failing to pursue alibi witnesses, raise an insanity defense, or adequately impeach State's witnesses.  The court held a series of hearings at which petitioner was represented by counsel.  In an entry order dated August 1992, the court dismissed the petition, stating that "[p]etitioner has failed to frame the issue in such a way that any likelihood of a different outcome would have been possible."  Petitioner did not appeal.

¶ 5.     In September 1992, petitioner filed his second PCR petition alleging a speedy trial violation and arguing that his "trial on information" rather than grand jury indictment violated his rights.  The court dismissed this petition on the merits, and petitioner did not appeal.

¶ 6.     Seven months later, petitioner filed his third PCR petition, once again alleging that his trial counsel had been ineffective in failing to pursue potential alibi witnesses.  The court dismissed the petition, noting that the same claim had already been addressed on the merits in the first PCR petition.  Petitioner appealed to this Court, arguing that the dismissal of his first PCR petition had not been on the merits because there was no evidentiary hearing held on the record, and thus the original PCR court could not have determined whether his claim had merit.  In re Towne, No. 1994-105 (Vt. April 25, 1995) (unpub. mem.).  In April 1995, this Court affirmed the dismissal on the ground that petitioner's claim was successive because the original PCR court dismissed the petition on the merits after considering the trial record and the underlying facts concerning the alleged deficiencies by trial counsel.  Id., slip op. at 2.  In addition, this Court concluded that the third petition suffered the same flaw as petitioner's first: petitioner did not

2

establish that the alibi witnesses would have confirmed his story and changed the outcome of the trial. Id.

¶ 7. In September 1995, petitioner filed his fourth PCR petition. He alleged, among other things, that his appointed counsel during his first PCR petition was ineffective for failing to appeal its dismissal or to notify him of the dismissal so that he could appeal pro se. That PCR court granted the State summary judgment, ruling in relevant part that his original PCR counsel's failure to appeal could have been raised in prior petitions and were thus successive. On appeal to this Court, petitioner argued that his claim was not successive because a PCR claim is only successive if it renews issues that were determined on the merits in an earlier decision and the ends of justice would not be served by reaching the merits on a later petition. The Court disagreed with petitioner and held that the PCR court had the discretion to dismiss new claims that could have been raised in an earlier petition, absent petitioner demonstrating cause as to why he had not raised them previously. In re Towne, No. 1997-483, slip op. at 2 (Vt. Sept. 30, 1998) (unpub. mem.).

¶ 8. In a fifth PCR petition petitioner argued that he was denied effective assistance of PCR counsel in his first PCR proceeding because his counsel failed to present alibi witnesses, appeal the petition dismissal, or notify petitioner of the dismissal. This court affirmed that PCR court's dismissal on the basis that all of these claims were raised in previous PCR petitions and were thus successive. In re Towne, No. 1999-216, slip op. at 1 (Vt. Jan. 6, 2000) (unpub. mem.).

¶ 9. While his fifth PCR petition was pending, petitioner filed a sixth, raising claims not relevant to this appeal. This Court affirmed that PCR court's dismissal. In re Towne, No. 2000-71, slip op. at 2 (Vt. Aug. 3, 2000) (unpub. mem.).

¶ 10. In October 2001, petitioner filed his seventh PCR petition arguing that the judge who presided over his first PCR petition had also participated in his underlying criminal proceeding, which violated 13 V.S.A. § 7131. This Court expressed doubts about petitioner's argument on the merits but noted that, even assuming § 7131 could be extended to disqualify a PCR judge who only heard pretrial motions in the underlying case, petitioner's claim exceeded the

3

scope of the PCR statute because it would not invalidate the conviction or sentence or otherwise make his criminal judgment vulnerable to collateral attack. Towne v. State, No. 2004-390, 2005 WL 6151843, at *1-2 (Vt. Oct. 28, 2005) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/eo04-390.S.pdf.[1] The Court further explained that, even if petitioner had a viable claim within the statute, the claim was precluded because he had not shown cause for failing to raise it in an earlier PCR petition. Id.

¶ 11. In October 2003, petitioner filed his eighth PCR petition alleging grounds not relevant to this appeal. This Court affirmed the dismissal and explained that the petition was successive because essentially this same claim had already been addressed and decided on the merits in a prior PCR proceeding, and "the ends of justice would [not] be served in reaching the merits" of this petition. Towne v. State, No. 2004-521, 2005 WL 6151845, at *2 (Vt. Oct. 28, 2005) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/eo04-521.S.pdf.

¶ 12. In October 2005, petitioner filed a petition that the PCR court construed as his ninth PCR,[2] challenging the 1986 traffic stop that precipitated his arrest for murder and arguing that he had ineffective assistance of counsel during both his trial and direct appeal. That PCR court dismissed the motion as successive, and this Court affirmed, explaining that petitioner's claims

---

[1] This Court dismissed petitioner's direct appeal of the trial court's decision as untimely. The PCR court subsequently denied petitioner's 60(b) motion to set aside and then reissue its initial judgment to enable petitioner to file a timely appeal. This Court's discussion of the merits of petitioner's arguments in his seventh PCR petition appeared in a decision affirming that PCR court's denial of petitioner's 60(b) motion.

[2] In October 2004, petitioner filed a motion alleging that the State violated his constitutional rights by arguing on the basis of laches for the dismissal of his federal habeas corpus petition because laches is not recognized as a defense in state PCR proceedings. This Court affirmed the trial court's dismissal, holding that it was without power to give petitioner relief for the State's successful litigation in federal court pursuant to federal law. Towne v. State, No. 2005-201, 2005 WL 6151856 at *1 (Vt. Oct. 1, 2005) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/eo05-201.S.pdf. The trial court treated this petition as a PCR, although for purposes of our analysis on appeal we accepted petitioner's assertion that his petition was not a petition for post-conviction relief. For that reason, we do not count this post-judgment petition in the tally of prior PCR petitions in this case.

"[did] not clearly differ in substance from those already raised and ruled upon in petitioner's many prior petitions." In re Towne, 2007 VT 80, ¶ 6, 182 Vt. 614, 938 A.2d 1205 (mem.).

## II. PCR Petitions on Appeal

¶ 13.    This consolidated opinion addresses petitioner's tenth and eleventh PCR petitions. In April 2012, petitioner, pro se, filed a "Petition for Appointment of Competent, Conflict-Free Counsel to File a 13 V.S.A. 7131 Petition for Ineffective Assistance of Court Appointed Trial, Appellate, and Post-Conviction Counsel in Light of the Recent U.S. Supreme Court Rulings in Martinez v. Ryan, 132 S. Ct. 1309 (2012) and Maples v. Thomas, 132 S. Ct. 912 (2012)." (PCR 2013-191).    Petitioner argued that: (1) his trial counsel was ineffective in failing to pursue alibi witnesses and for failing to disqualify himself due to a conflict of interest that arose from counsel's prior representation of a State's witness; (2) one of his lawyers on direct appeal, who had represented petitioner at trial, had a conflict of interest on appeal after petitioner filed his first PCR petition alleging ineffective assistance of trial counsel; (3) Chief Justice Jeffery Amestoy was conflicted from sitting on his direct appeal because Chief Justice Amestoy had been Vermont's Attorney General during petitioner's trial; and (4) petitioner's original PCR counsel had been ineffective in arguing his case, failing to appeal, and failing to notify petitioner that his petition had been dismissed so petitioner could appeal himself.    Petitioner cited Martinez v. Ryan, 556 U.S. 1 (2012), to argue that ineffective assistance of counsel at his original PCR proceeding created cause to bypass the procedural hurdles of successiveness and abuse of the writ.    The State filed a motion to dismiss the petition as successive, an abuse of the writ, and "for failure to state claims cognizable in a PCR petition."    Petitioner's court-appointed counsel did not respond to the State's motion.

¶ 14.    In March 2013, the PCR court granted the State's motion to dismiss.    With respect to petitioner's claims of ineffective assistance of trial counsel, the court concluded on the basis of the reasoning in Martinez and Maples v. Thomas, 565 U.S. 266 (2012), that ineffectiveness of petitioner's lawyer in his first PCR proceeding could overcome the procedural bars of

5

successiveness and abuse of the writ to enable the court to consider the merits of petitioner's PCR claims on the basis of ineffective assistance of trial counsel. However, the court concluded that petitioner had failed to establish that the first PCR court had erred in determining that his ineffective-assistance-of-trial-counsel claim was without merit. In particular, petitioner did not demonstrate that the errors of counsel during his underlying trial actually and substantially prejudiced him because he did not show that the alibi witnesses he contended trial counsel should have contacted would have provided exculpatory testimony. Because petitioner did not demonstrate prejudice from his initial PCR counsel's alleged ineffectiveness with respect to this claim, his claim was "barred as successive and an abuse of the writ."

¶ 15.    The court noted that petitioner's claim that he had ineffective assistance on direct appeal of his underlying conviction because one of his lawyers on direct appeal had a conflict was likewise successive. The court further explained that even if petitioner could link his failure to raise this claim in his original PCR petition to ineffective assistance of PCR counsel, his claim failed on the merits. The lawyer alleged by petitioner to be ineffective at trial did not represent him on appeal, and petitioner failed to show how the only lawyer who represented him both at trial and on appeal was incompetent in his appellate representation. Because the claim failed on the merits, the alleged ineffectiveness of petitioner's lawyer in his first PCR case in failing to raise the issue caused no prejudice, and the PCR court dismissed this claim as an abuse of the writ.

¶ 16.    Finally, the court concluded that petitioner's stand-alone claim of ineffective assistance of prior PCR counsel was beyond the scope of the PCR statute—which "is limited to correcting a defective conviction or sentence resulting from a violation of the law." 13 V.S.A. § 7131; id. § 7133.[3]

---

[3]    The PCR court did not address the other two issues raised in petitioner's tenth PCR petition: that one of his trial lawyers had an actual conflict of interest and the trial court failed to hold a hearing to address the matter when it came to light, and that Chief Justice Amestoy improperly participated in his direct appeal.

¶ 17.   In December 2014, petitioner, pro se, filed his eleventh PCR petition (PCR 2015-382).[4]  Petitioner elaborated on the circumstances surrounding the in-court disclosure that his trial counsel had previously represented a witness in the case, and explained that he had told his lawyer that he believed this witness had committed the murder.  Petitioner argued that the trial court should have advised him of his right to conflict-free representation and the dangers of this particular conflict, giving him the opportunity to decide whether to accept the risks and dangers of the conflict after consultation with independent counsel.  He identified examples of failures by his trial counsel that he attributed to the conflict.  Petitioner's appointed counsel filed no response to the State's motion to dismiss the petition as successive and an abuse of the writ.

¶ 18.   In September 2015, the court dismissed the petition on the basis that his claims had either already been raised and addressed on the merits in previous petitions or they could have been raised in previous petitions.  Furthermore, the court noted that "there is nothing to suggest that if trial counsel had done what [petitioner] now thinks he should have done, the result at his trial or sentencing would have been different."

¶ 19.   Now on consolidated appeal in  PCR 2013-191 and PCR 2015-382, petitioner appears to argue that: (1) the PCR court "jumped the gun" in dismissing PCR 2013-191 because his petition merely sought appointment of counsel and did not yet raise the merits of that petition; (2) the PCR court improperly failed to inform him that the State had filed a motion to dismiss in PCR 2013-191, preventing him from protecting his rights; (3) his trial counsel was ineffective for failing to pursue alibi witnesses who would have provided exculpatory evidence; (4) he was ineffectively represented on direct appeal because he had filed an ineffective-assistance-of-counsel claim against his appellate lawyer; (5) the court's decision in his first PCR proceeding was compromised because the judge in that matter had participated in pretrial rulings in the underlying

---

[4] Petitioner was represented by counsel for at least part of this proceeding.

prosecution; and (6) requiring him to represent himself in this appeal deprives him of meaningful access to the courts.[5]

### III.  Successive Petitions and Abuse of the Writ

¶ 20.    Vermont's PCR statute, 13 V.S.A. § 7131, provides "prisoners with an opportunity to challenge the legality of their confinement, and thus to guard against illegal restraints on liberty." In re Laws, 2007 VT 54, ¶ 9, 182 Vt. 66, 928 A.2d 1210 (quotation omitted).  Specifically, the statute provides that:

> A prisoner who is in custody under sentence of a court and claims the right to be released upon the ground that the sentence was imposed in violation of the constitution or laws of the United States, or of the state of Vermont, or that the court was without jurisdiction to impose the sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may at any time move the superior court of the county where the sentence was imposed to vacate, set aside or correct the sentence.

13 V.S.A. § 7131.

---

[5]  In addition, he makes general references to his "200+" claims of error in support of his various petitions for post-conviction relief.  Because these references are vague and not otherwise adequately briefed, we do not review whatever claims he may be attempting to reference.  See Quazzo v. Quazzo, 136 Vt. 107, 111, 386 A.2d 638, 641 (1978) (explaining that "we do not search the record for error not adequately briefed or referenced").

Petitioner also intimates that he received inadequate access to legal research materials, but appears to do so in the context of noting the ineffectiveness of his current PCR counsel.  It is not clear whether petitioner makes an independent claim based on the access-to-law-library allegations, or what relief he seeks.  Inadequate access to legal materials in these tenth and eleventh PCR proceedings would not in any event be grounds for post-conviction relief invalidating the underlying conviction or sentence.  13 V.S.A. § 7131; see also infra, ¶ 42 n.14.

Petitioner alludes in passing to his previous complaint that Chief Justice Amestoy improperly participated in his direct appeal, and his assertion that Justice Amestoy's name was deleted from the decision's signature page in response.  He does not appear to squarely renew the argument on appeal, and we note that it is demonstrably false.  Arguments for petitioner's direct appeal were heard in February 1991, and the final opinion was issued in May 1992, which was well before Chief Justice Amestoy was sworn into this Court in January 1997.  See Office of the Vermont Secretary of State, Vermont State Archives and Records Administration, Justices of the Supreme Court 1778-Present, https://www.sec.state.vt.us/media/308078/justices.pdf, [https://perma.cc/6B4J-3XWN].

¶ 21. We have identified two related but distinct restrictions that limit a petitioner's ability to raise a claim in a second or subsequent PCR petition: limitations on successive petitions and abuse of the writ. See Chandler v. State, 2016 VT 62, ¶ 6 n.2, 202 Vt. 226, 148 A.2d 574 (distinguishing between the test for abuse of the writ and successiveness); Laws, 2007 VT 54, ¶ 11 (same); see also Kuhlmann v. Wilson, 477 U.S. 436, 444 n.6 (1986) ("The terms 'successive petition' and 'abuse of the writ' have distinct meanings."). These constraints arise from Vermont's PCR statute and the gloss that this Court has applied to that statute.

A. Successive Petitions Resolved on the Merits

¶ 22. Vermont's PCR statute provides, "The court is not required to entertain a second or successive motion for similar relief on behalf of the same prisoner." 13 V.S.A § 7134. We have recognized that this provision applies to "relitigation of claims actually raised and decided on the merits in an earlier PCR." Laws, 2007 VT 54, ¶ 11.

¶ 23. In recent decisions, we have suggested that if a claim has been addressed on the merits in a prior proceeding, a court is affirmatively precluded from entertaining it again. See Chandler, 2016 VT 62, ¶ 8 ("Section 7134 bars relitigation of claims already raised and decided on the merits in an earlier PCR."); Towne, 2007 VT 80, ¶ 5 (same); Laws, 2007 VT 54, ¶ 11 (same). However, this open-and-shut approach does not entirely jibe with our prior caselaw, which we have not expressly overruled, that calls for consideration of the "ends of justice" in determining whether to entertain a successive petition raising a claim previously addressed on the merits.[6] We need not in this case resolve the tension in our caselaw because we would affirm under either test.

---

[6] In Sanders v. United States, the U.S. Supreme Court examined its test for a successive writ of habeas corpus under 28 U.S.C. § 2255, which at that time provided that a "sentencing court shall not be required to entertain a second or successive motion for similar [habeas] relief on behalf of the same prisoner." 373 U.S. 1, 3 (1963) (quotations omitted). The Court held that a district court had the discretion to decline to entertain a habeas writ if: (1) the same ground presented in the subsequent petition was determined adversely to the applicant in the prior petition; (2) the prior determination was on the merits; and (3) the "ends of justice" would not be served by reaching the merits in the subsequent petition. Id. at 15.

9

¶ 24.    Our standard of review turns in part on the applicable test.  If we have replaced the Sanders framework, with its inclusion of discretionary consideration of the "ends of justice," with a complete bar to successive petitions, our review is nondeferential.  Under this approach, the PCR court engages in a straightforward application of law that does not warrant a deferential review. See Chandler, 2016 VT 62, ¶ 6 n.2 (explaining that "[i]t matters little, if any, what standard of review is used" for successive petitions because § 7134 "bars relitigation of claims actually raised and decided on the merits in an earlier PCR").  On the other hand, to the extent that the "ends of justice" are a pertinent consideration in determining whether to entertain a successive petition regarding a matter previously resolved on the merits, we defer to the trial court's reasonable exercise of discretion on that question.  See Woodmansee, 132 Vt. at 109, 315 A.2d at 251 (explaining that under "ends of justice" test "each application is to be disposed of in the exercise of a sound judicial discretion guided and controlled by a consideration of whatever has a rational bearing on the propriety of the discharge sought").

---

Beginning in at least the early 1970s, this Court used the Sanders three-part "ends of justice" test in applying our own limitation on successive petitions.  See State v. Provencher, 128 Vt. 586, 591, 270 A.2d 147, 150 (1970) (Holden, C.J., concurring) (suggesting, with concurrence of all members of Court, that § 7134 has "the same force and effect" as corresponding federal statute, and identifying three-part Sanders framework for evaluating subsequent petitions); see also In re Currier, 147 Vt. 645, 645, 513 A.2d 41, 41 (1986) (mem.) (applying three-part test and concluding that petitioner had failed to show that ends of justice would be served by permitting redetermination of petitioner's claim); Woodmansee v. Stoneman, 132 Vt. 107, 110, 315 A.2d 249, 251 (1974) (expressly adopting three-part framework for evaluating successive petitions).

However, in Laws, the Court sought to establish a test for abuse of the writ, and, in doing so, differentiated our test for abuse of the writ compared to that for successiveness.  2007 VT 54, ¶ 20.  In this analysis, the Court briefly examined our past case law concerning successive petitions and noted that we had employed the Sanders "ends of justice" test.  Id. ¶ 11.  Then, the Court asserted without discussion that "it is clear that § 7134 bars litigation of claims actually raised and decided on the merits in an earlier PCR."  Id.  Since Laws, rather than holding that a court is not required to entertain a subsequent writ addressing a matter previously resolved on the merits, we have apparently barred successive petitions altogether without addressing the "ends of justice" prong of the Sanders framework that we had previously adopted.  See Chandler, 2016 VT 62, ¶ 8 (citing Towne, 2007 VT 80, ¶ 5, and Laws, 2007 VT 54, ¶ 11); Towne, 2007 VT 80, ¶ 5 (citing Laws, 2007 VT 54, ¶¶ 11, 20-22).  Laws did not purport to overrule our prior decisions in whole or in part, but did articulate a standard that is inconsistent with our prior approach.

## B. Abuse of the Writ

¶ 25. A close cousin to the restriction against successive petitions doctrine is the prohibition of abuse of the writ, which pertains to claims raised for the first time in a second or subsequent PCR petition. When a petitioner files a second or subsequent petition, the government bears the burden of pleading abuse of the writ, setting forth a petitioner's writ history, identifying the claims that appear for the first time, and alleging the petitioner has abused the writ. Laws, 2007 VT 54, ¶¶ 21-22 (citing McCleskey v. Zant, 499 U.S. 467, 494 (1991)). Then the burden shifts to the petitioner to show cause for failing to raise the claim previously and actual prejudice from the default. Id. ¶ 22. Under the cause prong, the petitioner must show "some objective factor external to the defense" that "impeded counsel's effort to raise the claim in an earlier proceeding." Id. ¶ 20 (quotation omitted). Examples of cause include situations where a factual or legal basis was not available at the time of the earlier proceeding, instances of official interference, or ineffective assistance of counsel. Id. (citing McCleskey, 499 U.S. at 493-94). Actual prejudice requires more than merely showing that the alleged errors during the underlying trial "created a possibility of prejudice," but rather that they worked to the petitioner's "actual and substantial disadvantage," poisoning "the entire trial with errors of constitutional dimensions." Id. (quotation omitted).

¶ 26. We have not previously established a standard of review for abuse of the writ. In considering the matter, we turn to federal case law to aid our interpretation of Vermont's PCR statute. See In re Chandler, 2013 VT 10, ¶ 16 n.4, 193 Vt. 246, 67 A.3d 261 ("We frequently refer to federal case law in the interpretation of our own post-conviction relief statute because, as we have observed, our statute is in the nature of habeas corpus."); Laws, 2007 VT 54, ¶ 13 (explaining that federal habeas corpus statute, 28 U.S.C. § 2255, is "federal counterpart to Vermont's § 7134").

¶ 27. Federal appellate courts historically reviewed trial court decisions involving abuse of the writ for abuse of discretion. This tradition stems, in large part, from Sanders v. United States, in which the U.S. Supreme Court established an abuse of discretion standard for review of

11

federal district court judgments of abuse of the writ. 373 U.S. at 18. In Sanders, the Court called upon district courts to examine whether a petitioner raised a new claim that was deliberately withheld in the first petition, id. at 17-18, or whether the petitioner had exercised "inexcusable neglect" in failing to raise the claim previously. See McCleskey, 499 U.S. at 488-90. The Court explained that this "inexcusable neglect" determination was "addressed to the sound discretion of federal trial judges" since the district courts own "the major responsibility for the just and sound administration of federal collateral remedies." Sanders, 373 U.S. at 18.

¶ 28. In 1991, the U.S. Supreme Court adopted the cause and prejudice test noted above in order to guide federal courts in reviewing allegedly abusive habeas corpus petitions and clarify "the imprecise contours of the term 'inexcusable neglect.' " McCleskey, 499 U.S. at 493-95, 496. The Court explained that the test is objective and specific to avoid "individualized enforcement of the Constitution in different parts of the Nation." Id. at 496.

¶ 29. In the wake of McCleskey, federal circuit courts of appeal began to abandon the traditional abuse-of-discretion standard in favor of nondeferential review. These courts reasoned that the cause-and-prejudice test, as opposed to the old "inexcusable neglect" test, involves a straightforward application of law that requires far less discretion on the part of the district court. See, e.g., Zayas v. I.N.S., 311 F.3d 247, 252-53 (3d Cir. 2002) (explaining that after McCleskey, third circuit reviews abuse of the writ de novo); Macklin v. Singletary, 24 F.3d 1307, 1313 (11th Cir. 1994) ("In this post-McCleskey era, the abuse of the writ doctrine presents objective, threshold questions involving application of law to facts. We review district court rulings on such issues not under an abuse of discretion standard, but de novo.").

¶ 30. Today, there is an almost even split in the federal circuits as to the standard of review for abuse of the writ. A slight majority of circuits review the trial courts' determinations without deference. See In re Phillips, No. 17-3729, 2017 WL 4541664, at *2 (6th Cir. July 20, 2017); Esposito v. Ashcroft, 392 F.3d 549, 550 (2d Cir. 2004) (per curiam); Zayas, 311 F.3d at 252-53; United States v. Palmer, 296 F.3d 1135, 1141 (D.C. Cir. 2002); Ahmed v. Warden-FCI

Englewood, 36 F. App'x 943, 944 (10th Cir. 2002); Jones v. Hanks, No. 94-CV-765, 1997 WL 355515, at *1 (7th Cir. June 24, 1997); Macklin, 24 F.3d at 1313 (1994). While at least four circuits still apply an abuse-of-discretion review. See McGary v. Scott, 27 F.3d 181, 183 (5th Cir. 1994); Campbell v. Blodgett, 997 F.2d 512, 516 (9th Cir. 1992); Williams v. Groose, 979 F.2d 1335, 1337 (8th Cir. 1992); Miller v. Bordenkircher, 764 F.2d 245, 248 (4th Cir. 1985).

¶ 31.    As set forth below, we would hold that petitioner's claims that have not been addressed on the merits in an earlier petition are an abuse of the writ under any standard of review. For that reason, our resolution of this case does not turn on whether we review the trial court's ruling as to newly raised claims for abuse of discretion or without deference. We accordingly decline to decide at this juncture which standard governs our review of the trial court's dismissal of claims raised in a second or subsequent PCR petition on account of abuse of the writ.[7]

IV. Petitioner's Proposed State Law Adaptation of Martinez v. Ryan

¶ 32.    In Martinez v. Ryan, the U.S. Supreme Court ruled that ineffective assistance of PCR counsel in arguing ineffective assistance of trial counsel during petitioner's initial state PCR proceeding can constitute cause under federal habeas corpus review to allow the court to entertain a claim of ineffective assistance of counsel at trial even if the petitioner failed to raise the claim in the initial PCR proceeding. 566 U.S. at 9, 13-14. Federal law prevents federal courts from reviewing the merits of a claim in a writ of habeas corpus that a state court declined to hear on independent state procedural grounds, absent the petitioner demonstrating cause and prejudice. Id. at 9. In Martinez, the Court formulated the following rule:

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint

[7] We recognize that, like the proper framework for evaluating successive petitions raising issues that have been previously resolved on the merits, the standard of review for abuse-of-the-writ rulings warrants a clear explication from this Court. However, because resolution of this question is not essential to deciding this case, we opt to defer the question to a future case in which it may be more fully briefed by counsel on both sides.

counsel for the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of Strickland v. Washington, 466 U.S. 668 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

Id. at 14.[8] This rule constitutes an exception to the general rule that negligence on the part of a prisoner's post-conviction attorney does not qualify as "cause" to excuse compliance with state procedural rules. See Coleman v. Thompson, 501 U.S. 722, 752-53 (1991). The Martinez Court explained that this exception was necessary because the right to effective assistance of trial counsel "is a bedrock principle in our justice system" and a PCR proceeding is often a petitioner's first opportunity to argue a claim of ineffective assistance of counsel. 566 U.S. at 11-12. If a state imposes limits to second and subsequent petitions, ineffective assistance of a petitioner's initial PCR counsel may foreclose a petitioner from ever actually raising ineffective assistance of trial counsel. Id. The Court noted, however, that its holding was not grounded in the Constitution but rather in equity as it applied specifically to the federal habeas procedural default rule. Id. at 16. The Court did not purport to require states to adopt Martinez, or a Martinez-like rule, for examining the implications of ineffective assistance of original PCR counsel on state procedural limits such as successiveness and abuse of the writ.[9]

---

[8] In Trevino v. Thaler, the U.S. Supreme Court extended this rule to state procedures that "by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." 569 U.S. 413, 414 (2013).

[9] See, e.g., Johnson v. State, 395 P.3d 1246, 1260-61 (Idaho 2017) ("Because the holding in Martinez is not a constitutional holding it is not binding on state courts . . . . Accordingly, we are not obliged to follow Martinez in our state courts."); Brown v. McDaniel, 331 P.3d 867, 870 (Nev. 2014) (explaining that Martinez "does not address state procedural bars"); Kelly v. State, 745 S.E.2d 377, 377 (S.C. 2013) (mem.) ("Like other states, we hereby recognize that the holding in Martinez is limited to federal habeas corpus review and is not applicable to state post-conviction relief actions."); Ex parte Preyor, No. WR-72,660-04, 2017 WL 3379283, at *2 (Tex. Crim. App. July 24, 2017) ("[C]ourts have uniformly recognized that the Martinez-Trevino rule is a federal exception not a constitutional command to correct state habeas proceedings. More specifically,

¶ 33.    To show cause under Martinez, the petitioner must demonstrate that the ineffective assistance of trial counsel claim has merit and that the initial PCR counsel was ineffective in arguing, or declining to argue, this claim.  See, e.g., Cox v. Horn, 757 F.3d 113, 119 (3d Cir. 2014) (explaining that under Martinez, petitioner must show that "default was caused by ineffective assistance of [PCR] counsel" and that "the underlying claim of trial counsel ineffectiveness is substantial, meaning the claim has some merit" (quotation omitted)).

¶ 34.    Petitioner urges us to adopt Martinez, or some similar rule, as an exception to the principles set forth above concerning successive petitions and abuse of the writ.  As we understand his argument, he would have us conclude under our state law that where counsel in the initial PCR proceeding has been ineffective in raising or advocating a claim of ineffective assistance of trial counsel (and perhaps other claims that could only be raised for the first time on initial collateral review) that ineffectiveness would satisfy the "cause" prong of the "cause and prejudice" test that applies to the abuse-of-the-writ analysis of claims raised for the first time in a second or subsequent petition.  He apparently also urges us to hold that ineffective assistance of counsel in the initial PCR proceeding constitutes grounds to relitigate subsequent petitions raising claims previously resolved on the merits, although it is less clear how this exception would fit into either of the alternate frameworks for evaluating successive petitions described above.

V.  Application to Petitioner's Claims on Appeal

¶ 35.    We need not decide whether to accept petitioner's invitation to import the reasoning of Martinez into our state law governing successive PCR petitions and abuse of the writ because we conclude that, even if we did so, petitioner's claims in this case would fail.  In particular, we conclude that (1) he has failed to show prejudice from the claimed ineffectiveness of trial counsel with respect to identifying alibi witnesses and securing their testimony; and (2) he has failed to

courts have held that Martinez does not provide a basis for state courts to excuse petitioners from compliance with state procedural rules.")

show prejudice in connection with his claim of ineffective assistance of counsel on direct appeal of his conviction.[10]

## A. Trial Counsel's Failure to Secure Testimony of Alibi Witnesses

¶ 36.     Even if we adopted some version of Martinez in our state law, petitioner's attempt to circumvent the successive-petition limitation due to the alleged ineffectiveness of his initial PCR counsel in advocating the ineffectiveness-of-trial-counsel claim would fail. First, the claim is clearly successive, having been previously resolved on the merits—twice. Second, to avoid the successive-petition limitation even by his own argument, petitioner would have to show that he has been prejudiced by trial counsel's alleged ineffectiveness. Finally, he has not demonstrated any such prejudice, relying only on speculation and hypothetical possibilities to support his claim.

---

[10]     Several of petitioner's process-related claims do not require extensive analysis. We reject petitioner's claim that the trial court erred in construing his 2012 "Petition for Competent, Conflict-Free Counsel to File a 13 V.S.A. 7131 Petition for Ineffective Assistance of Court Appointed Trial, Appellate, and Post-Conviction Counsel in Light of Recent U.S. Supreme Court Rulings in Martinez v. Ryan, 132 S. Ct. 1309 (2012) and Maples v. Thomas, 132 S. Ct. 912 (2012)" as one for post-conviction relief, and in reaching the merits of that petition. While petitioner captioned his motion as a request for PCR counsel, its content "return[ed] quickly to [the] familiar ground" of an argument for PCR. Chandler, 2016 VT 62, ¶ 11 (quotation omitted). Moreover, insofar as petitioner suggests that the PCR court's ruling was premature, and he has not had an opportunity to present evidence or arguments concerning the merits of his PCR petition, we note that he has not presented any additional arguments or proffered any additional evidence on appeal.

We also conclude that requiring petitioner to present his own case has not denied him meaningful access to the courts. Petitioner has no constitutional right to court-appointed counsel on appeal in connection with his tenth and eleventh PCR petitions. See In re Bruyette, 2014 VT 30, ¶ 9, 196 Vt. 261, 96 A.3d 1151 ("A convicted offender has no constitutional right to state-funded counsel in an appeal from a trial court judgment in a PCR case." (citing Coleman v. Thompson, 501 U.S. 722, 755 (1991))). His statutory right to state-funded counsel is generally conditioned on an assessment by the Defender General. Id. ¶¶ 10-18.

And we reject petitioner's contention that the trial court had a duty to mail him, personally, a copy of the State's motion to dismiss. Petitioner makes no claim that the State failed to serve its motion on his counsel of record, as required by Vermont Rule of Civil Procedure Rule 5(b). While the Court frowns on the failure of defense counsel to file any response to the State's motions to dismiss in the two dockets, we do not credit petitioner's claim that the court's failure to send him a copy of the State's motion constituted reversible error.

¶ 37.    Petitioner's claim of ineffective assistance of trial counsel due to counsel's failure to pursue alibi witnesses was addressed on the merits on two previous occasions—by the PCR court in his original PCR petition and by this Court in his third petition.[11]  See Towne, No. 94-105, slip op. at 1.  This claim is successive.  Even if this Court revived our prior test to allow for consideration of the interests of justice in considering whether to review a successive petition, petitioner has not established any basis for departing from our general reluctance to allow relitigation of a claim raised and decided on the merits in a prior PCR proceeding.

¶ 38.    Moreover, even if we adopted some version of Martinez and applied it to successive petitions as well as abuse-of-the-writ claims, petitioner would have to show prejudice.  The need to demonstrate prejudice arises at two junctures in the analysis.  First, we have adopted the Strickland v. Washington, 466 U.S. 668 (1984), standard for determining ineffective assistance of counsel under the Vermont Constitution.  See, e.g., In re Sharrow, 2017 VT 69, ¶ 9,__ Vt.__, __ A.3d __.  Pursuant to Strickland, the petitioner must show (1) "that counsel's performance fell below an objective standard of reasonableness informed by prevailing professional norms," and (2) that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  In re LaBounty, 2005 VT 6, ¶ 7, 177 Vt. 635, 869 A.2d 130 (mem.) (quotation omitted); see also Sharrow, 2017 VT 69, ¶ 9.  In other words, under Strickland, to establish that initial PCR counsel was ineffective for failing to effectively advocate the claim of ineffective assistance of trial counsel, failing to appeal the PCR court's dismissal of the ineffective-assistance-at-trial claim, and failing to notify petitioner of the dismissal so he could appeal himself, petitioner must demonstrate that it would have made a difference if counsel had advocated more effectively, appealed the dismissal, or notified petitioner of the dismissal.

¶ 39.    Second, as noted above, to avoid the limitation on successive petitions under Martinez, petitioner "must also demonstrate that the underlying ineffective-assistance-of-trial-

---

[11]  In addition, this claim was dismissed as successive in his fifth PCR petition.  Towne, No. 99-216, slip op. at 1.

counsel claim is a substantial one, which is to say that [he] must demonstrate that the claim has some merit." 566 U.S. at 14. Whether cast as a component of the threshold "ineffective assistance" determination, or as a necessary element of the analysis under Martinez, petitioner's burden of persuasion in seeking to circumvent the limitations on successive petitions requires that he make some showing to support his claim that if trial counsel had properly investigated alibi witnesses and secured their testimony, it would have helped petitioner's defense. See Laws, 2007 VT 54, ¶ 21 (explaining that once State establishes basis for abuse-of-writ claim, burden shifts to petitioner to show cause for prior failure to raise claim in question); In re Dunbar, 162 Vt. 209, 211-12, 647 A.2d 316, 319 (1994) (explaining that petitioner alleging ineffective assistance of counsel bears burden of proving that counsel's performance fell below professional standard and "that counsel's deficient performance prejudiced the defense").

¶ 40. As the PCR courts in both proceedings below noted, there is no evidence to suggest that if trial counsel had done what petitioner contends he should have done, the result of his trial and sentencing would have been any different. Petitioner speculates that the one identified witness and the ten unidentified witnesses would have confirmed his alibi. He does not offer any affidavits, deposition testimony, or other basis other than his own conjecture to support his belief on this point. Petitioner's speculation on this point is insufficient to establish the requisite prejudice at either step of the analysis noted above. Accordingly, whether we review the trial courts' determinations with or without deference, we conclude that there is no basis for entertaining successive petitions on the claim of ineffective assistance of trial counsel based on counsel's failure to secure the testimony of additional alibi witnesses.[12]

---

[12] In his petition to the court below, petitioner raised an ineffective-assistance-of-trial-counsel claim premised on an alleged conflict of interest between trial counsel and a State's witness. Because petitioner did not address this claim in his briefs on appeal, we do not reach it. State v. Grenier, 2014 VT 121, ¶ 11 n.4, 198 Vt. 55, 110 A.3d 291.

B.  Counsel's Alleged Conflict of Interest on Direct Appeal

¶ 41.   For similar reasons, even if we incorporated into Vermont law the Martinez approach to reviewing claims for post-conviction relief raised in the second or subsequent PCR petitions, we would reject petitioner's argument because his claim that his appellate counsel was ineffective due to a conflict does not have substantial merit.[13]   Petitioner argues that his appellate counsel was ineffective because petitioner was represented on appeal by his trial counsel, Attorney Stetler, and during the course of his direct appeal, petitioner filed his first PCR petition claiming ineffective assistance of counsel, thereby creating a conflict of interest for his appellate counsel. In contrast to his claim that his trial counsel was ineffective due to his failure to muster alibi witnesses, it does not appear that any court has previously resolved this claim on the merits. Petitioner apparently raised the claim for the first time in his ninth PCR petition, which was dismissed as successive.  For the reasons set forth above, supra, ¶¶ 36-39, petitioner can only avoid dismissal on the basis of abuse of the writ if he can establish cause for failing to raise the claim in the earliest possible petition, and prejudice as a result of the claimed conflict.  In other words, even if petitioner could show cause for failing to raise this claim in the earliest possible petition, he would also have to show that if his initial PCR counsel had raised the issue it would have made a difference to his conviction or sentence—that is, that the claim has merit.  We conclude that he has not made such a showing.

¶ 42.   Court records reflect that Attorneys E.M. Allen and William A. Nelson entered appearances for petitioner in his direct appeal.  Attorney Allen was Vermont's Defender General during the course of much of petitioner's direct appeal, but there is no evidence that he played a direct role in the appeal.  Attorney Nelson—who did not represent petitioner during his trial—

---

[13]   In Davila v. Davis, the U.S. Supreme Court declined to extend Martinez to instances where initial PCR counsel was ineffective in arguing ineffective-assistance-of-appellate-counsel, as contrasted with trial counsel.  __ U.S.__, 137 S. Ct. 2058, 2065 (2017).  However, Davila would not constrain our ability to adopt or reject Martinez, or our ability to decide whether to extend Martinez to claims of ineffective assistance of appellate counsel.

19

authored the appellate brief and presented the oral argument. The evidence supports the PCR 2013-191 court's finding that Attorney Stetler was not counsel of record in the direct appeal. The fact that Attorney Stetler was apparently pictured in a newspaper article sitting at counsel table during the oral argument on appeal does not undermine this conclusion. Petitioner has not demonstrated how the alleged conflict arising from his ineffective-assistance claims regarding Attorney Stetler undermined his representation by Attorney Allen or Attorney Nelson—the lead counsel on the appeal—during his preparation and presentation of the appeal. Regardless of whether we review the trial courts' decisions with or without deference, because petitioner's claims fall short on the merits, he cannot avoid the impact of the abuse-of-the-writ limitation.[14]

Affirmed.

FOR THE COURT:

_____

Associate Justice

---

[14] We reject petitioner's argument that the judge who presided in the initial PCR proceeding was ineligible to do so because he made pretrial rulings in the underlying case for the reasons we articulated in addressing the exact same challenge in connection with petitioner's seventh PCR petition. Even assuming § 7131 can be extended to disqualify a PCR judge who only heard pretrial motions in the underlying case, petitioner's claim exceeds the scope of the PCR statute because it would not invalidate the conviction or sentence or otherwise make his criminal judgment vulnerable to collateral attack. Towne, 2005 WL 6151843, at *1-2. To the extent that petitioner continues to press a stand-alone claim based on the denial of constitutionally effective assistance of counsel in his initial PCR proceeding, that claim fails for the same reason.