NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2026 VT 18

No. 25-AP-057

In re Joseph Bruyette

Supreme Court

On Appeal from
Superior Court, Rutland Unit,
Civil Division

February Term, 2026

Alexander N. Burke, J.

Matthew Valerio, Defender General, and Briana Hauser and Anthony A. Donn, Appellate
  Defenders, and Sarah Shine, Law Clerk (On the Brief), Montpelier, for Petitioner-Appellant.

Charity R. Clark, Attorney General, and Arthur O. Brown and Zachary J. Chen, Assistant
  Attorneys General, Montpelier, for Respondent-Appellee.


PRESENT:  Reiber, C.J., Eaton, Waples, Nolan and Drescher, JJ.


¶ 1.    **WAPLES, J.**   Petitioner Joseph Bruyette sought post-conviction relief (PCR) on the ground of ineffective assistance of sentencing counsel. The civil division denied the PCR petition on the merits and, in the alternative, held that the petition was barred by the doctrine of claim preclusion. Petitioner appealed, arguing the court erroneously denied his claim on the merits, excluded admissible evidence at the final hearing, and applied the doctrine of claim preclusion in the context of a PCR proceeding. We conclude that the court improperly applied claim preclusion but that the error does not require reversal because petitioner failed to prove his claim of ineffective assistance of counsel. We therefore affirm.

¶ 2.    The following facts are drawn from the judicial record and the PCR court's findings. In 1990, petitioner was convicted of burglary and three counts of sexual assault. The evidence established that he forcibly entered the victim's apartment, threatened her as well as her

infant son with a razor-knife, and repeatedly forced her to engage in sexual intercourse, oral sex, and other various degrading acts. State v. Bruyette, 158 Vt. 21, 24-26, 604 A.2d 1270, 1271-72 (1992) (providing further details on assault).

¶ 3.     Following petitioner's conviction, the court held a sentencing hearing, at which petitioner was represented by Joseph Kershaw, Esq.  Prior to the hearing, Attorney Kershaw reviewed the presentence investigation report (PSI) with petitioner and filed written objections to the PSI.  At the hearing, the trial court first addressed Attorney Kershaw's five objections to the PSI, sustaining three of them.  The State and Attorney Kershaw then presented their arguments. During the defense's presentation, Attorney Kershaw noted that he had not previously appeared before the specific court holding the hearing and was not familiar with what that court looked for in a sentencing proceeding.  Attorney Kershaw remarked on his fifteen-year practice in Florida and responded to the State's sentencing argument, addressing the goals of deterrence and rehabilitation and petitioner's criminal record.  He argued for a sentence with a suspended portion to allow petitioner to undergo inpatient treatment.  Attorney Kershaw did not present any testimony or evidence on petitioner's behalf.

¶ 4.     The trial court rejected Attorney Kershaw's arguments and sentenced petitioner to an aggregate term of forty-five-to-eighty-five years.  In determining the sentence, the court considered the lack of available rehabilitation programs for petitioner; its view that petitioner's "satisfaction is the center of his decisions"; the tremendous pain he caused the victim; and the importance of punishment as well as safety for petitioner's victim and all victims.

¶ 5.     We affirmed petitioner's direct appeal, in which he raised various challenges to his conviction. Bruyette, 158 Vt. at 24, 30, 35-36, 604 A.2d at 1271, 1274, 1277-78 (holding evidence of petitioner's prior consensual sexual conduct, which was similar to conduct perpetrated on victim, was properly admitted to prove identity; addition of third charge after arraignment was not reversible error; and physical evidence was not improperly seized).  Petitioner has since filed six PCR actions (excluding the instant petition), four of which he unsuccessfully appealed to this

2

Court. See In re Bruyette, No. 2012-471, 2014 WL 7237815, at *1 (Vt. Dec. 12, 2014) (unpub. mem.), https://www.vtcourts.gov/sites/default/files/documents/eo12-471.pdf (describing trial court's dismissals of petitioner's first and second PCR petitions, which alleged ineffective assistance of trial counsel and ineffective assistance of counsel in first PCR petition proceedings, respectively, and affirming dismissal of petitioner's third PCR petition for abuse of writ on claim of ineffective assistance of trial counsel); In re Bruyette, No. 2015-141, 2016 WL 2848696, at *1 (Vt. May 12, 2016) (unpub. mem.), https://www.vtcourts.gov/sites/default/files/documents/eo15-141.pdf (affirming dismissal of PCR petition for improper venue); In re Bruyette, No. 2015-181, 2016 WL 3248828, at *2-3 (Vt. June 9, 2016) (unpub. mem.), https://www.vtcourts.gov/sites/default/files/documents/eo15-181.pdf (concluding venue transfer during original trial was lawful and affirming dismissal of PCR petition); In re Bruyette, No. 2018-220, 2019 WL 6523008, at *1 (Vt. Dec. 2, 2019) [hereinafter Bruyette 2019] (unpub. mem.), https://www.vtcourts.gov/sites/default/files/documents/eo18-220.pdf (affirming dismissal of PCR petition on claim of ineffective assistance of sentencing counsel as abuse of writ).[1]  He also appealed a denial of his motion attacking his sentence.  See State v. Bruyette, No. 2012-188, 2012 WL 6827287, at *1 (Vt. Nov. 8, 2012) (unpub. mem.), https://www.vtcourts.gov/sites/default/files/documents/eo12-188.pdf (affirming court's denial of petitioner's motion to correct sentence under claim that sentences amounted to double jeopardy).

¶ 6.    Relevant to the instant case is petitioner's sixth PCR petition, where "petitioner alleged his trial counsel was ineffective at sentencing for failing to investigate and present mitigating evidence." Bruyette 2019, 2019 WL 6523008, at *1.  The civil division dismissed the petition with prejudice as an abuse of the writ because petitioner failed to demonstrate a persuasive reason for not raising the claim in a prior petition. Id. at *1.  We affirmed. Id. at *1-2 (explaining

---

[1]  Bruyette 2019 refers to the PCR petition in that appeal as petitioner's fourth petition, instead of his sixth petition.  This appears to be an error, which we correct here. Infra, ¶ 6.

3

after State satisfies burden to plead abuse of writ, burden shifts to petitioner to disprove abuse by showing "cause and actual prejudice," but petitioner failed to do so).

¶ 7.     In 2018, petitioner filed the instant PCR petition—his seventh—asserting the same claim as his sixth PCR petition: ineffective assistance of sentencing counsel.[2]  The PCR court held a final merits hearing in November 2024, at which petitioner was represented by counsel.  Three days before the hearing, the State moved to dismiss the action, asserting the ineffective-assistance claim had been decided against petitioner in his sixth PCR case and citing the law-of-the-case doctrine.  The court denied this motion as untimely.

¶ 8.     At the merits hearing, petitioner presented testimony from Crystal Barry, a psychotherapist employed at Therapeutic Works, Inc., and Daniel Albert, a criminal defense attorney who has supervised defense attorneys for sixteen years and testified as an expert in evaluating Attorney Kershaw's sentencing performance.  Barry testified about what petitioner told her regarding his background, including his upbringing, substance use, and criminal record. Attorney Albert opined that Attorney Kershaw provided ineffective assistance to petitioner because he (1) stated he was ill-versed in "what the trial court was looking for"; (2) used only generic arguments; (3) failed to present information about petitioner's background; and (4) did not participate in petitioner's PSI interview.  Attorney Albert posited that if mitigating evidence from petitioner's past had been presented to the court, there was a reasonable probability the outcome would have been different.  Attorney Albert acknowledged that Attorney Kershaw had fifteen years of experience defending serious criminal cases in Florida, and that he discussed petitioner's probation and parole history and made articulate arguments regarding rehabilitation and deterrence.

¶ 9.     At the end of the hearing, the State moved for judgment as a matter of law, renewing its argument that petitioner's claim had already been conclusively litigated in the State's favor in

---

    [2] Petitioner's original petition and subsequent amendments raised other claims, but at the merits hearing, petitioner only presented evidence on the ineffective-assistance claim.

his sixth PCR case. The court deferred ruling on the motion to allow petitioner to respond in writing. Both petitioner and the State filed post-hearing memoranda.

¶ 10. In February 2025, the court issued a written order denying the PCR petition on the merits and, alternatively, granting the State's motion for judgment as a matter of law. In concluding that petitioner failed to prove ineffective assistance at sentencing, the court explained that Barry's testimony about traumatic incidents petitioner reported to her was not admitted for the truth of what happened in petitioner's past but rather to show what information Attorney Kershaw could have gathered. Petitioner did not present any reliable evidence of what occurred in his childhood, and without admissible evidence about petitioner's childhood experiences, the court could not ascertain what alleged traumas could have been presented at sentencing. In forming his opinion, Attorney Albert did not testify that Barry's testimony was information "of a type reasonably relied upon by experts" such as himself. See V.R.E. 703 ("If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted."). Without knowing what mitigating evidence could have been discovered, the court declined to credit Attorney Albert's opinion that Attorney Kershaw acted unreasonably in failing to adequately investigate petitioner's background. The court rejected petitioner's remaining claims of deficient performance, finding that Attorney Kershaw's statement about his lack of familiarity with the court was merely an introduction to a new judge; Attorney Kershaw made arguments specific to petitioner and did not rely only on generalizations; and Attorney Kershaw adequately communicated with petitioner regarding the PSI through reviewing the PSI with him and filing objections to the PSI. The court also determined that petitioner failed to show prejudice resulting from Attorney Kershaw's alleged errors because the sentencing court clearly viewed the impact on the victim and the need for punishment and incapacitation as the most important factors in imposing petitioner's sentence.

¶ 11. In the alternative, the court held that petitioner's claim was barred by the doctrine of claim preclusion because it was previously litigated and decided against petitioner in his sixth PCR case. The court acknowledged petitioner's argument that claim preclusion historically has not applied to PCR proceedings but reasoned that not applying claim preclusion under these circumstances would produce illogical results and allow a petitioner to repeatedly raise identical claims. Petitioner appealed.

I. Ineffective Assistance of Counsel

¶ 12. We first address petitioner's claim that the PCR court erred in concluding that he failed to establish ineffective assistance of sentencing counsel. To prove a claim of ineffective assistance of counsel, petitioner must show by a preponderance of the evidence that counsel's performance "fell short of professional standards and that it is reasonably probable that [petitioner's] sentence would have been less if he had received appropriate representation." In re Williams, 2014 VT 67, ¶ 25, 197 Vt. 39, 101 A.3d 151; see In re Dunbar, 162 Vt. 209, 212, 647 A.3d 316, 319 (1994) (describing first prong as showing by preponderance of evidence that "counsel's performance fell below an objective standard of reasonableness informed by prevailing professional norms" and second prong as showing that "counsel's deficient performance prejudiced the defense"). "In making this showing, petitioner cannot rely on the distorting effects of hindsight, and must surpass the strong presumption that counsel's performance fell within the wide range of reasonable professional assistance." In re Grega, 2003 VT 77, ¶ 7, 175 Vt. 631, 833 A.2d 872 (mem.).

¶ 13. We apply a deferential standard of review to the PCR court's decision. Williams, 2014 VT 67, ¶ 12; see Grega, 2003 VT 77, ¶ 6 ("Post-conviction relief is a limited remedy."). "We review factual findings for clear error and will uphold the legal conclusions if they are reasonably supported by the findings and the applicable legal principles." Williams, 2014 VT 67, ¶ 12.

6

¶ 14. Petitioner primarily argues that Attorney Kershaw was deficient in failing to thoroughly investigate petitioner's background and present mitigating evidence at sentencing.[3] Petitioner asserts that Attorney Kershaw's performance was prejudicial because if he had presented mitigating evidence, it is reasonably likely that petitioner would have received a lesser sentence.

¶ 15. We disagree. While Barry, the psychotherapist, testified about the alleged traumas petitioner reported to her, Barry's testimony was admitted only to show what information could have been gathered through further investigation, not for the truth of what petitioner experienced. Petitioner presented no direct evidence regarding his childhood experiences. Attorney Albert's opinion that Attorney Kershaw provided inadequate assistance in failing to investigate and present petitioner's background took Barry's testimony regarding the alleged traumas as presumptively true. However, Attorney Albert did not establish that the information Barry provided was reliable such that he could form an opinion about Attorney Kershaw's performance based on Barry's testimony alone. See V.R.E. 702 (permitting expert to provide opinion if testimony is "based upon sufficient facts or data," "the product of reliable principles and methods," and if expert "has applied the principles and methods reliably to the facts of the case"); V.R.E. 703 ("If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted."). Because the court had insufficient evidence before it to conclude what, if any, childhood traumas petitioner experienced, it declined to credit Attorney Albert's opinion that Attorney Kershaw was at fault for not investigating and presenting such alleged traumas. See State v. Sullivan, 2018 VT 112, ¶ 18, 208 Vt. 540, 200 A.3d 670 ("A court is not required to credit an

---

[3] While petitioner raised the arguments that Attorney Kershaw did not file a sentencing memorandum, called no witnesses at sentencing, and made only generic arguments below, he has not briefed them on appeal, and we therefore do not address them. V.R.A.P. 28(a) (listing briefing requirements, including "appellant's contentions and the reasons for them—with citations to the authorities, statutes, and parts of the record on which the appellant relies").

expert witness's opinion whenever the witness is qualified to testify as an expert."); <u>Lofts Essex, LLC v. Strategis Floor and Décor Inc.</u>, 2019 VT 82, ¶ 23, 211 Vt. 204, 224 A.3d 116 (explaining trial court must consider expert testimony but need not credit expert testimony). In other words, because the alleged traumas may not have occurred—leaving nothing for Attorney Kershaw to investigate and present—the court could not conclude that Attorney Kershaw was deficient in failing to do so.

¶ 16. Petitioner contends the State did not show that the information Barry provided was not of a type reasonably relied upon by expert criminal defense attorneys, but petitioner had the burden of proof on this point, not the State. See <u>In re Combs</u>, 2011 VT 75, ¶ 9, 190 Vt. 559, 27 A.3d 318 (mem.) (establishing "petitioner bears the burden of proof on a PCR petition"). The court did not err in holding petitioner to his burden in the PCR proceeding.

¶ 17. While petitioner argues that Barry's testimony would have been admissible at sentencing because the Vermont Rules of Evidence do not apply in sentencing hearings, the fact that her testimony may have been admissible does not establish that petitioner in fact experienced the traumas Barry testified about. See V.R.E. 1101(b)(3) (providing Rules of Evidence do not apply in sentencing proceedings). Because Attorney Albert did not establish that a reasonable attorney would have relied on the information Barry provided, petitioner did not demonstrate that Attorney Kershaw was deficient in failing to present that evidence at sentencing.

¶ 18. Petitioner further asserts that the PCR court explicitly accepted Attorney Albert's testimony that "the facts that were recited by Ms. Barry were just the tip of the iceberg" and "would have prompted more." Petitioner argues that the court violated the principle of party presentation in subsequently declining to rely on Barry's testimony on the ground that Attorney Albert had not established that a reasonable criminal defense attorney would have relied upon it. This argument fails because the transcript makes clear that the court was explaining the purpose for which it admitted the testimony, not stating that it credited petitioner's theory that the alleged traumas were, in fact, "the tip of the iceberg." Admitting the testimony did not require the court to credit it. See

8

Obolensky v. Trombley, 2015 VT 34, ¶ 27, 198 Vt. 401, 115 A.3d 1016 (explaining "it is the province of the trial court to determine the credibility of the witnesses and weigh the persuasiveness of the evidence" (quotation omitted)); Sullivan, 2018 VT 112, ¶ 18 (providing court need not credit expert witness opinion).

¶ 19. We note that petitioner's arguments and Attorney Albert's testimony presume that because Attorney Kershaw did not present information about petitioner's childhood at sentencing, he never investigated petitioner's background at all. However, Attorney Kershaw did not testify at the PCR hearing, and petitioner presented no evidence indicating what investigative steps Attorney Kershaw took, if any. It is possible that Attorney Kershaw did investigate petitioner's background but chose not to present that information. Given the severity of petitioner's crimes, Attorney Kershaw may have concluded that focusing on petitioner's past posed a risk of appearing insensitive to the victim, heightening the already charged atmosphere, or creating an impression that petitioner was beyond rehabilitation in light of his past failed attempts at rehabilitation. See In re Pernicka, 147 Vt. 180, 183, 513 A.2d 616, 618 (1986) (explaining " '[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant' " (quoting Strickland v. Washington, 466 U.S. 668, 688-89 (1984)). Such a decision would have been a valid exercise of Attorney Kershaw's discretion; indeed, "[t]rial counsel are permitted a great deal of discretion in decisions regarding trial strategy, and even the failure of that strategy is not the standard by which a reviewing court will measure trial counsel's competence." Dunbar, 162 Vt. at 212, 647 A.2d at 319; see id. at 212-13, 647 A.2d at 319-20 (characterizing defendant's burden as "a heavy one" and emphasizing whether trial counsel had "any reasonable strategy and whether they pursued it with adequate preparation and diligence"); see also Grega, 2003 VT 77, ¶ 14 (explaining we do not judge tactical decisions from hindsight to determine attorney competence).

9

¶ 20. The record demonstrates that Attorney Kershaw did execute a strategy at sentencing. In response to the State's argument that petitioner had an "unbroken history of criminal activity" for over half his life, Attorney Kershaw emphasized that most of petitioner's crimes were against property, not against people. Countering the State's focus on petitioner's substance use and failures in previous rehabilitation programs, Attorney Kershaw argued that petitioner's failures in past rehabilitation efforts were attributable to "the system that failed him." Attorney Kershaw explained that the parole board released petitioner before he was ready to reenter the community and against the caseworker's recommendations, and petitioner had not been offered programming to reduce his risk of recidivism. Attorney Kershaw also responded to the State's arguments that "the Court has an opportunity to send a message" to deter others; that incapacitation was "critical" for public protection; and that "punishment is essential." Attorney Kershaw explained the ineffectiveness of deterrence; that rehabilitation, rather than incapacitation, would be in society's best interests in the long term; and that the court should balance the need for punishment and rehabilitation and consider the ripple effect a long sentence would have upon petitioner and his family. Attorney Kershaw requested consecutive sentences of five-to-ten years on each count, with twenty years suspended, and a requirement that petitioner undergo inpatient treatment. Although the sentencing court ultimately did not impose a sentence with a rehabilitative component, the court remarked that Attorney Kershaw's "argument in sentencing [was] well taken" and characterized it as "one of the most magnificent arguments on the weaknesses of the deterrence notion that I have ever heard." That Attorney Kershaw's strategy was not successful does not mean that his performance was deficient. See Dunbar, 162 Vt. at 212, 647 A.2d at 319.

¶ 21. This case is distinguishable from the cases petitioner cites, In re Williams, 2014 VT 67, and Porter v. McCollum, 558 U.S. 30 (2009). In Williams, the petitioner started a fire, unintentionally leading to the deaths of three young children and their grandmother. 2014 VT 67, ¶¶ 1, 4. The petitioner, who was nineteen years old at the time of the offense, lacked any specific intent to harm the victims or others, demonstrated remorse, and labored to help people exit the

burning building. Id. ¶¶ 1, 37, 39. He had no criminal record, did not use substances, and demonstrated positive behavior prior to the offense. Id. (describing positive behavior and background, including petitioner's graduation from high school, employment, connections with friends and family, and vocational plans). Even though there were at least five available witnesses, including the petitioner's relatives and employers, who "had favorable things to say about petitioner," the defense counsel failed to present testimony about the petitioner's positive characteristics, remarked substantially only on retribution, and "offered almost nothing of substance in [the] petitioner's defense." Id. ¶¶ 39, 41, 44; see id. ¶ 44 (referencing PCR court's statement that " '[t]here was little, if any, functional difference between the State's sentencing presentation and the defense's' "). We held the sentencing attorney provided ineffective assistance because, among other reasons, he failed to investigate and present mitigating information about the petitioner. Id. ¶¶ 2, 28, 48.

¶ 22. The instant case presents very different facts. Petitioner was thirty years old when he committed the burglary and sexual assaults, had a prior criminal record, did not demonstrate positive behavior prior to the offense, and specifically intended to harm the victim and potentially her infant child if she did not comply. Unlike in Williams, where the defense counsel's sentencing presentation did not present known positive information about the petitioner for no apparent reason, here, the PCR court had no evidence of petitioner's actual traumas that Attorney Kershaw could have discovered and presented. And, if the alleged traumas were known to Attorney Kershaw, he may have strategically decided not to discuss them under the circumstances of the case, as they may have undermined his argument that petitioner was able to lead a productive and crime-free life. Attorney Kershaw also may have determined that the risk of eliciting damaging testimony about petitioner from witnesses outweighed the benefits. Attorney Kershaw's sentencing presentation addressed all four sentencing goals and directly responded to the State's sentencing presentation, contrasting Williams, where the defense counsel offered essentially nothing in petitioner's defense despite the ready availability of positive information. See id. ¶ 41

11

(describing "one-sided" sentencing hearing due to defense counsel's failure to provide testimony about petitioner's positive characteristics and where "only element of the sentencing decision to receive substantial consideration was retribution").

¶ 23.   In Porter v. McCollum, the petitioner was convicted of two counts of first-degree murder after shooting his former girlfriend and her boyfriend. 558 U.S. at 31. At sentencing, the defense put on only one witness, the petitioner's ex-wife, and read an excerpt from a deposition. Id. at 32. The petitioner filed a PCR petition, claiming his sentencing counsel failed to investigate and present mitigating evidence, and the court conducted a two-day evidentiary hearing, during which the petitioner "presented extensive mitigating evidence, all of which was apparently unknown to his penalty-phase counsel." Id. at 33; see id. at 33-36 (describing testimony by petitioner's siblings, Army commander, and expert in neuropsychology regarding petitioner's abusive childhood, heroic military service, trauma due to serving in two horrific battles in war, substance abuse, and impaired mental capacity). At the post-conviction hearing, the defense counsel testified that "he had only one short meeting with [the petitioner] regarding the penalty phase" and that "[h]e did not obtain any of [the petitioner's] school, medical, or military service records or interview any members of [the petitioner's] family." Id. at 39. Counsel explained that this failure was due to the petitioner's "fatalistic and uncooperative" nature. Id. at 40. The U.S. Supreme Court held that the defense counsel's decision not to investigate and present background information based on the petitioner's difficult personality constituted deficient performance. Id.

¶ 24.   In contrast, here, petitioner presented no direct evidence at the PCR hearing about his alleged traumas. He only presented Barry's testimony about information petitioner told her and Attorney Albert's opinion on Attorney Kershaw's performance, which Attorney Albert formed based on Barry's testimony, to prove his claim of ineffective assistance of sentencing counsel. As explained above, Barry's testimony was not admitted for the truth of what petitioner experienced; the court had insufficient evidence to conclude if any of the alleged childhood traumas actually occurred to support Attorney Albert's opinion that Attorney Kershaw acted unreasonably.

12

Moreover, unlike the defense counsel in Porter, Attorney Kershaw did not testify about his actions or trial strategy. See id. Petitioner therefore failed to fulfill his heavy burden in overcoming the "strong presumption" that Attorney Kershaw's conduct "fell within the wide range of reasonable professional assistance." In re Grega, 2003 VT 77, ¶ 7.

¶ 25. We further conclude petitioner failed to demonstrate a reasonable probability that, but for Attorney Kershaw's alleged errors, the result of the proceeding would have been different. Williams, 2014 VT 67, ¶ 29. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," which entails "a reasonable chance and not merely an abstract possibility." In re Burke, 2019 VT 28, ¶ 18, 210 Vt. 157, 212 A.3d 189 (quotations omitted); see Williams, 2014 VT 67, ¶ 34 ("A mere showing that attorney error had some conceivable effect on the outcome is insufficient." (quotation omitted)). We have acknowledged the difficulty in proving prejudice at sentencing where "the PCR court must determine whether there is sufficient circumstantial evidence to support" finding "a reasonable probability that the weakness in petitioner's defense altered the outcome." Williams, 2014 VT 67, ¶ 29.

¶ 26. Petitioner contends information about his background would have changed the court's perception of him, but he fails to demonstrate that this changed perception would have altered the sentence. The court has broad discretion when imposing a sentence and may consider a wide range of factors so long as its decision is based on the legitimate goals of punishment, prevention, rehabilitation, and deterrence. Sullivan, 2018 VT 112, ¶¶ 6-8 (describing "wide range of factors" sentencing court may consider and providing "court must ground its decision on legitimate goals," including "punishment, prevention, rehabilitation, and deterrence" (quotation omitted)); 13 V.S.A. § 7030(a) (providing court shall consider nature of crime; defendant's history, character, family circumstances, and relationships; need for treatment; noncompliance with court orders; and risk to self, others, and community at large presented by defendant in determining sentence). As the PCR court observed, the sentencing hearing transcript demonstrates that the sentencing court focused primarily on the goals of punishment and prevention. The sentencing

13

court recounted "the facts that night that happened to the victim": "the extortion as to potential danger to her child, the bondage, the degrading activities, the assaults themselves, the invasion of privacy and the loss of the sanctity of peace." This resulted in "nearly indescribable . . . devastation to [petitioner's] target." The court explained it had "to look back . . . at the record as it is" and imposed a sentence "based on real fault" because petitioner "certainly did" the crimes. The court reiterated there was "real punishment involved in this sentence because it has to be that way." The court also cited the goals of incapacitation and public protection, centering the need for "safety now for [petitioner's victim] and safety for all victims." The court's emphasis on punishment for the crimes undertaken and its focus on the acts themselves, regardless of what led petitioner to commit those acts, does not support a reasonable probability that information about petitioner's history would have altered the sentence. See State v. Cyr, 141 Vt. 355, 358, 449 A.2d 926, 927 (1982) ("Sentences are imposed with regard to the situation and nature of the offender as well as according to the crime charged.").

¶ 27.    Petitioner theorizes that evidence of his childhood trauma would have humanized him and supported a rehabilitative sentence. However, contrary to petitioner's statement that the court concluded petitioner was "simply inhuman," the court recognized two sides to petitioner—one was a "decent, articulate, intelligent . . . gentleman" and the other was monstrous when under the influence of substances. The court considered petitioner's prior failures in rehabilitative programs, explaining that "[a] lot of people that have worked with [petitioner] have exposed him to the best programs we had available." The court reasoned that there were no available programs suitable for petitioner given his severe substance use. Additional context regarding petitioner's childhood would not have altered the fact that his previous program involvement had been ineffective and that no programs targeting severe substance use were then available. Petitioner has not established a reasonable probability that his sentence would have been different if Attorney Kershaw presented evidence of his childhood experiences.

14

¶ 28. For the foregoing reasons, we conclude petitioner has not demonstrated ineffective assistance and affirm the trial court's denial of petitioner's PCR motion on the merits.

## II. Evidence of Weeks School Report

¶ 29. Petitioner next argues the PCR court erroneously excluded a 2024 report on historical abuse at the Weeks School, which petitioner attended for about four months cumulatively on two separate occasions in 1975 and 1976, and that the exclusion of this evidence was not harmless. We review the trial court's "evidentiary rulings deferentially and reverse only when there is an abuse of discretion resulting in prejudice." State v. Spooner, 2010 VT 75, ¶ 15, 188 Vt. 356, 8 A.3d 469; see State v. Yoh, 2006 VT 49A, ¶ 18, 180 Vt. 317, 910 A.2d 853.

¶ 30. At the merits hearing, Attorney Albert testified that certain pieces of information would have triggered competent sentencing counsel to conduct a more in-depth investigation, including "just the fact that [the PSI] mentioned that [petitioner] attended Weeks School." Attorney Albert said:

> And maybe you can't fault Attorney Kershaw for that, but Attorney Kershaw, as a new attorney handling a major sentencing hearing, should have consulted with other attorneys if he didn't feel solid about where he was going to . . . represent his client. So any Franklin County attorney—or I dare say any attorney in the State of Vermont knew what a horrible place Weeks School was.

¶ 31. Petitioner then sought to admit the 2024 Weeks School Report, issued by the Vermont Truth and Reconciliation Committee, into evidence under V.R.E. 803(8)(A). See V.R.E. 803(8)(A) (providing that reports of public office or agency "are not excluded by the hearsay rule"). Petitioner explained the report demonstrated that abuse at the Weeks School occurred prior to 1990 such that Attorney Kershaw could have become aware of the abuse prior to sentencing. The State objected to the admission of the exhibit, arguing that the report was hearsay and contained no information specifically related to petitioner. The court sustained the objection because "Attorney Albert indicated [he would] not fault Attorney Kershaw" for lack of awareness about the Weeks School and because the report was from 2024 and about historical abuse.

15

Petitioner later renewed his proffer of the 2024 Weeks School Report, arguing that it established public awareness of abuse at the Weeks School prior to his sentencing hearing and explaining that the purpose of the document was to give a timeline of the historical abuse there. The State objected that the report featured dates many years before petitioner attended the school; there was no indication of public knowledge or published information about the abuse; and the report was created in 2024. The court maintained its ruling excluding the report, citing Attorney Albert's "clear testimony that he could not fault Attorney Kershaw for knowledge of the Weeks School."

¶ 32. We first note that, contrary to the State's position, this argument was properly preserved for appeal. Petitioner explained the purpose of the document and its contents concerning public awareness of abuse at the Weeks School. Following discussion, the court ruled—twice—that it would not admit the exhibit. See V.R.E. 103(a)(2) (requiring "substance of the evidence" to be made known to court and providing that "[o]nce the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal").

¶ 33. Petitioner argues the court mischaracterized Attorney Albert's testimony as not faulting Attorney Kershaw for his lack of knowledge about the Weeks School, because Attorney Albert went on to state that he should have consulted with other local attorneys about the school. The court's interpretation of Attorney Albert's testimony was reasonable. As the transcript indicates, Attorney Albert's testimony on this point was equivocal: he stated that "maybe you can't fault Attorney Kershaw for that," but that he should have consulted other attorneys "if he didn't feel solid about where he was going." See In re Nash, 158 Vt. 458, 462, 614 A.2d 367, 369 (1991) (providing "trial court is entitled to draw reasonable inference from the testimony it receives" in typical case because "court's vantage point" allows it to see, hear, and observe witnesses who testify).

¶ 34. Moreover, while petitioner claims the PSI's references to the Weeks School should have led Attorney Kershaw to investigate the school, the PSI did not contain any information that

16

would have prompted a reasonable attorney in his circumstances to further investigate the Weeks School or consult with other attorneys about it. The PSI simply stated that petitioner attended the school for purposes of detention and evaluation and that various psychological and psychiatric tests were performed at the school; it indicated nothing suggesting that the Weeks School was notorious for abuse or other reasons warranting further investigation. Under these circumstances, the court did not abuse its discretion in concluding that petitioner failed to lay an adequate foundation for admission of the report. See Sweet v. Roy, 173 Vt. 418, 442, 801 A.2d 694, 712 (2002) ("The trial court has broad discretion in determining the adequacy of the foundation for admitting evidence.").

¶ 35. The court also reasonably excluded the report for lack of relevance. The report was created over three decades after petitioner's sentencing hearing. It did not contain any information particularized to petitioner: the report did not demonstrate that petitioner suffered abuse at the school or show that any abuse generally occurred during the time petitioner attended it. While petitioner sought to introduce the report to demonstrate public awareness about historical abuse at the Weeks School, the report did not show that abuse at the Weeks School was so well-publicized at the time of petitioner's sentencing that Attorney Kershaw was necessarily deficient in failing to present about the school. Given the report's generality and remoteness in time, the court did not abuse its discretion in excluding the report. See State v. Larose, 150 Vt. 363, 371, 554 A.2d 227, 233 (1988) (explaining "decision to admit evidence lies within the sound discretion of the trial court," and specifically, "[r]ulings on remoteness lie largely within the discretion of the trial judge" (quotations omitted)); cf. State v. Shaw, 149 Vt. 275, 277-78, 542 A.2d 1106, 1107 (1987) (holding court did not abuse discretion in admitting testimony from friends of sexual assault complainant that her behavior and personality changed after assault where defendant claimed testimony was too remote to be relevant).

¶ 36. Finally, petitioner has not demonstrated prejudice resulting from the court's exclusion of the 2024 Weeks School Report. The court allowed Attorney Albert to testify about

what was in the PSI, including petitioner's attendance at the Weeks School. Attorney Albert testified about the school's notorious reputation and opined that Attorney Kershaw could have investigated the school further. Because Attorney Albert's testimony already established public awareness of the Weeks School's reputation for abuse, exclusion of further evidence of its general reputation did not prejudice petitioner. See State v. Lampman, 2011 VT 50, ¶ 31, 190 Vt. 512, 22 A.3d 506 (upholding exclusion of threatening text messages from victim to defendant where defense failed to lay adequate foundation and there was no prejudice because defendant testified about text messages).

### III. Claim Preclusion

¶ 37. Last, petitioner argues the court erred in concluding that claim preclusion barred his claim in this PCR proceeding.[4] Although we affirm on the merits, we will address this issue to provide clarity for litigants and the trial court in future cases.

¶ 38. "Whether claim preclusion applies to a set of facts is a legal question we review de novo." Sutton v. Purzycki, 2022 VT 56, ¶ 20, 217 Vt. 326, 295 A.3d 377. We agree with petitioner that the court erred in applying claim preclusion here. As we have explained, the civil doctrine of claim preclusion does not apply to PCR cases. In re Laws, 2007 VT 54, ¶ 14, 182 Vt. 66, 928 A.2d 1210 (explaining that while claim preclusion ordinarily precludes litigant "from raising a claim that was or could have been fully litigated in a prior judicial proceeding," claim preclusion "has traditionally not been applied to habeas corpus relief"); see In re Chandler, 2013 VT 10, ¶ 16 n.4, 193 Vt. 246, 67 A.3d 261 (describing Vermont's post-conviction relief statute as "in the nature of habeas corpus"). This is because the post-conviction relief process "provide[s] prisoners with an opportunity to challenge the legality of their confinement, and . . . guard[s] against illegal

---

[4] Petitioner argues the State waived this claim below because its motion to dismiss on these grounds was untimely. We disagree. While the State did not specifically refer to the doctrine of claim preclusion until its post-trial memorandum, the State raised the argument with enough specificity to allow the court a sufficient basis to address it, which the court did. See V.R.C.P. 8(c).

18

restraints on liberty." Laws, 2007 VT 54, ¶ 9 (quotation omitted); see id. ¶ 14 (describing "fundamental reason" claim preclusion does not apply is because habeas corpus relief is "the last resort for challenging the exercise of governmental power," and therefore, inapplicability of claim preclusion is inherent in writ). In recognition of a prisoner's fundamental rights against illegal confinement, Vermont law expressly permits prisoners in custody to "vacate, set aside, or correct" an unlawful sentence "at any time." 13 V.S.A. § 7131.

¶ 39. However, allowing a petitioner to repeatedly bring PCR petitions involving the same claims would unreasonably strain judicial resources. Laws, 2007 VT 54, ¶ 15. To this end, "[w]e have identified two related but distinct restrictions that limit a petitioner's ability to raise a claim in a second or subsequent PCR petition: limitations on successive petitions and abuse of the writ." In re Towne, 2018 VT 5, ¶ 21, 206 Vt. 615, 182 A.3d 1149. Abuse of the writ "pertains to claims raised for the first time in a second or subsequent PCR petition."[5] Towne, 2018 VT 5, ¶ 25. The doctrine of successive petitions, like claim preclusion, "applies to 'relitigation of claims actually raised and decided on the merits in an earlier PCR.' " Id. ¶ 22 (quoting Laws, 2007 VT 54, ¶ 11). Unlike claim preclusion, the doctrine of successive petitions may not constitute an absolute bar. Id. ¶ 23 & n.6 (noting some cases have suggested absolute bar, which appears to be in tension with other cases that require consideration of whether "ends of justice" would be served in assessing merits of successive petition). Vermont's PCR statute, 13 V.S.A. § 7134, provides: "The court is not required to entertain a second or successive [PCR] for similar relief on behalf of the same prisoner." This suggests that the court has discretion in deciding whether to entertain a second or successive PCR.[6] See Towne, 2018 VT 5, ¶ 23 & n.6; Laws, 2007 VT 54, ¶¶ 11, 16 (characterizing § 7134 as bar but outlining three-step test to determine whether previously litigated

---

[5] Petitioner's sixth PCR was dismissed for abuse of the writ because petitioner claimed ineffective assistance of sentencing counsel for the first time and failed to demonstrate why he did not raise the claim in his earlier PCRs. Bruyette 2019, 2019 WL 6523008, at *1.

[6] We leave resolution of this tension for a future case because, as explained above, we conclude that the PCR court properly denied petitioner's ineffective-assistance claim on the merits.

claims can be barred, including consideration of "ends of justice" (quotation omitted)); Woodmansee v. Stoneman, 132 Vt. 107, 109-110, 315 A.2d 249, 250-51 (1974) (assessing successive petition under three-step test and explaining that "while denial of relief to a prisoner in a prior proceeding is not a bar," court may consider prior application and "may decline to entertain the new application").

¶ 40. Because the State alleged that petitioner's ineffective-assistance claim was litigated and decided in Bruyette 2019, the PCR court should have assessed the State's motion under the doctrine of successive petitions rather than claim preclusion. However, because we affirm the court's decision that petitioner failed to demonstrate ineffective assistance of sentencing counsel, the error is not a basis for reversal.

Affirmed.

FOR THE COURT:

_____

Associate Justice